Filed 9/18/13  Marriage of Bastien and Dominguez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of ROCHELLE T. BASTIEN and DENNIS O. DOMINGUEZ | |
| | D061209 |
| ROCHELLE T. BASTIEN, | |
| Appellant, | (Super. Ct. No. ED55622) |
| v. | |
| DENNIS O. DOMINGUEZ, | |
| Respondent. | |

APPEAL from orders of the Superior Court of San Diego County, William C. Gentry, Jr., Judge.  Affirmed.

David A. Kay for Appellant.

Stephen Temko for Respondent.

This appeal is from the court's denial of Rochelle T. Bastien's request to set aside a stipulated dissolution of marriage judgment.  The judgment was entered in August 2002.

On December 30, 2010, eight years after the judgment was entered, Rochelle[1] sought to set aside the judgment on the grounds of fraud, under Family Code[2] section 2122, subdivision (a). She asserted that in December 2009 she found one of her checks dated in 2000 showing her husband Dennis had paid the mediator of their divorce $180 for legal fees, indicating an improper relationship between Dennis and the mediator.

Dennis brought a motion to dismiss the request to set aside the judgment on the ground that it was barred by the applicable one-year statute of limitations. The court granted the motion and awarded Dennis $10,000 in attorney fees.

On appeal, Rochelle asserts (1) she could not have discovered the alleged fraud earlier than when she accidentally discovered it in December 2009; (2) because she had a fiduciary relationship with their divorce mediator, she had no duty to investigate; (3) if she had known about the attorney/client relationship, she would not have signed the marriage settlement agreement (MSA); and (4) the court erred in awarding attorney fees in the amount of $10,000 to Dennis. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Background and Prior Actions and Motions*

Dennis and Rochelle were married in 1977. In 2002 the parties instituted divorce proceedings. In June through August of 2002, Denny Kershek, an attorney and family

---

[1]    As is the custom in family law matters, the parties are referred to by their first names. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1.) We intend no disrespect.

[2]    All further statutory references are to the Family Code unless otherwise specified.

2

friend, mediated their dispute. Dennis and Rochelle entered into an MSA, which in August 2002 was incorporated into their judgment of dissolution.

In 2005 Rochelle wrote a series of letters to Kershek. She accused Kershek of being biased in favor of Dennis and colluding with him to hide assets. She wrote Kershek that he "violated [his] ethical and legal mandate that [he] behave in a fair and impartial manner, in [his] role as 'mediator.'" She further wrote, "I have had concerns (before, during and after the signing of that 'agreement') gives [*sic*] me cause to consider malfeasance." "The process was marked all along with flagrant, outrageous, and conspicuous behaviors on your part, Denny." "I intend to insist on the basis of fraud . . . ." "I accept responsibility for my own generosity, but not for your deceit."

In 2005 Rochelle also had "great suspicion" that her financial advisor, Ted Roman was in alliance with Dennis. She claimed Roman and Dennis worked in concert to misrepresent that a Putnam account had been liquidated.

In January 2006 Rochelle filed a motion to divide the Putnam retirement account, which she asserted was a missing asset. Dennis contended the Putnam account was considered in the MSA and fell under a TD Waterhouse IRA.

In 2007 Rochelle filed a civil lawsuit for fraud and breach of fiduciary duty against Dennis and Roman. On August 24, 2007, Rochelle dismissed Dennis from the lawsuit.

In July 2007 Rochelle sought additional funds for their daughter's college tuition. She filed a motion in family court to force Dennis to pay a $10,000 loan their daughter had incurred. Rochelle's request for Dennis to pay the $10,000 was denied by the court,

the court finding it was not clear from the MSA terms that Dennis was liable for the $10,000 loan.

In February 2008 Rochelle sought the appointment of a special master to determine if there were missing assets. This request was denied. A pension was valued at $350,000 and it turned out its true value was $35,000, not $350,000. During the hearing Rochelle admitted the correct number was $35,000. At the end of the hearing, the court stated Rochelle's remedy was not the appointment of a special master but instead might be moving to set aside the judgment on the basis of fraud.

In March 2008 Roman wrote Rochelle an e-mail that said in part, "You have a belief that Dennis must be hiding something from you, that there must be more than this but I don't see it. You keep trying to involve everyone in your conspiracy theory such as your divorce attorney, Dennis and myself."

In May 2008 Rochelle filed a motion to set aside the judgment. She alleged fraud was committed by Dennis and Roman. She alleged there were omitted assets including accounts at Putnam, and Community First National Bank, life insurance, pension and profit sharing plans and the value of Dennis's business. The court denied Rochelle's motion.

In September 2008 Rochelle wrote to an individual named Brian Sample that Kershek and Roman were "working against my best interests . . . ."

In March 2009 Rochelle filed a lawsuit against Kershek. The gravamen of the complaint was that Kershek did not disclose a prior attorney-client relationship with Dennis. After a demurrer was granted, Rochelle filed a second amended complaint. The

4

second amended complaint alleged fraud in that Rochelle had just found, in December 2009, a new piece of evidence, a check dated April 2000 for $180 from her account to Kershek for legal services.

In July 2010 the court granted Kershek's motion for summary judgment and dismissed the fraud complaint against Kershek. The court found Rochelle's fraud claim against Kershek was barred by the three-year statute of limitations contained in Code of Civil Procedure section 338, subdivision (d). In doing so, the court noted the 2005 letters Rochelle wrote accusing Kershek of deceit, as well as partiality and loyalty to Dennis. The court concluded that Rochelle's claim for fraud was barred since Rochelle had control of the $180 check, the check register, and had made fraud claims against Kershek as early as 2005. Rochelle had both notice or information of circumstances to put a reasonable person on inquiry and she had the opportunity to obtain knowledge from sources open to her investigation at least by 2005.

In April 2012 we affirmed the grant of summary judgment in *Bastien v. Kershek* (April 17, 2012, D058424) [nonpub. opn.].). In doing so, we concluded that Rochelle discovered her cause of action no later than 2005, when she accused Keshek of siding with Dennis.

Rochelle also sued her financial advisor, Roman, and her two previous attorneys, Lowenstein and Fritz. Those cases were ultimately dismissed.

B. *Rochelle's December 30, 2010 Motion To Set Aside the Judgment*

On December 30, 2010, eight and a half years after the judgment of dissolution was entered, Rochelle filed in this action an order to show cause (OSC) to set aside the

5

August 2002 Judgment. This set aside request was again based upon alleged fraud. Rochelle alleged that in 2002 attorney Kershek did not disclose he had previously represented Dennis.

Rochelle alleged, as she did in her action against Kershek, that on December 31, 2009, she was looking through some family records from 2000, and in boxes unrelated to any issues with Kershek, she found a check dated April 3, 2000, from a joint bank account she had with Dennis. The check was written by Dennis to Kershek for $180 for "legal fees." Rochelle asserted that "[p]reviously there was no reason to look through these old bank records regarding my claim against Mr. Kershek. Only after issuance of a 2008 subpoena in another case was I reasonably motivated to look at old bank records and stumbled upon this check."

Rochelle admitted she had not looked at the check register, but asserted Dennis handled paying bills during this period of time. She also claimed she was unaware of any preexisting legal relationship between Dennis and Kershek.

Rochelle further alleged she did not receive one-half of the community estate because Dennis's medical practice was undervalued, he had opened a checking account with $15,000 from his medical practice in July 2002, and in September 2002, after the MSA was signed, he issued a check back to his corporate account.

C. *Dennis's Motion To Dismiss*

In response, Dennis filed a motion for dismissal of Rochelle's motion, sanctions pursuant to section 271, and for attorney fees and costs. In that motion, Dennis outlined the history of Rochelle's motions since the 2002 judgment was entered. Dennis also

argued that Rochelle's motion should be dismissed on res judicata grounds because her claim of fraud and challenge to valuation of the community property had been previously raised and adjudicated by the court in 2008. Moreover, Dennis argued the $180 check to Kershek was not for legal services, but reimbursement for a family camping trip. He asserted he wrote the check on Rochelle's business checkbook and with Rochelle's knowledge.

In that motion Dennis requested attorney fees, as well as sanctions for frivolous conduct. In support of the request for attorney fees, Dennis filed an income and expense declaration (I&E).

In her response to Dennis's motion, Rochelle argued the newly found $180 check was new evidence, res judicata did not bar her claim, and she was denied due process when the original MSA was executed and entered as a judgment. In support of her response Rochelle filed a declaration that stated that Dennis's "camping" explanation for the $180 check to Kershek was without merit. She contended the camping trip occurred in 2001, not 2000, as Dennis claimed.

Dennis also asserted the motion was barred by the doctrine of collateral estoppel as Rochelle's motion set aside the judgment asserting the same facts presented previously to the court in her October 2008 motion to set aside.

Dennis filed another I&E on August 3, 2011, and declared he had paid his attorney $25,808 to date.

In August 2011 Dennis filed an in limine motion to dismiss Rochelle's motion on the grounds of statute of limitations and res judicata. Dennis asserted that the one-year

7

statute of limitations contained in section 2122, subdivision (a) barred Rochelle's claim. He argued Rochelle should have discovered any fraud prior to December 30, 2009, or more than one year prior to her filing her motion to set aside the 2002 judgment. Dennis lodged pleadings filed in the Kershek malpractice suit, including the court's ruling granting summary judgment in that action.

Dennis also filed a declaration in response to Rochelle's supplemental declaration. Dennis again declared he had never hired Kershek, never paid him for legal services and never paid him for mediation services. He asserted Kershek's daughter and Rochelle and his daughter were best friends and there were many times they each would advance expenses and pay each other back. Dennis also stated the following: (1) Rochelle had the actual check in her possession since at least 2002; (2) she had a carbon copy of the check in her possession since April, 3, 2000; (3) the check appeared on Rochelle's bank statement for April 2000; (4) the cancelled check was returned to her by her bank; (5) the check was listed on her bank register; and (6) Rochelle wrote checks out of the same checkbook both prior to and after the April 2, 2000 check.

Rochelle filed an opposition to Dennis's motion to dismiss. Her response focused on the res judicata ground for denying her motion, but did not address the statute of limitations argument. Rochelle also did not file a response to Dennis's request for attorney fees or an income and expense declaration.

D. *The Court's Ruling*

On August 10, 2011, Rochelle's motion to set aside, and Dennis's motion for fees and sanctions was heard. The court granted Dennis's motion to dismiss. In doing so, the

8

court reasoned that Rochelle had control of the checking records, the check was drawn on her account, and in 2008 she had filed a civil suit against Kerhsek for fraud. The court found that Rochelle "had the ability and should have discovered this prior to the time that she did and prior to one year on the filing of her motion of December 30, 2010." The court awarded Dennis $10,000 as fees and costs.

## DISCUSSION

### I. *APPLICABLE LEGAL PRINCIPLES*

"[S]tatutes of limitation do not begin to run until a cause of action accrues. [¶] Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.] An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [Citations.] [¶] A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806-807.)

"A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must

go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111 (*Jolly*).)

The applicable statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry. A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery. Wrong and wrongdoing in this context are understood in their lay and not legal senses. (*Jolly, supra,* 44 Cal.3d at pp. 1110-1111.)

As this court stated in *Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1374, """[u]nder this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [her] investigation (such as public records or corporation books), the statute commences to run."""

It is undisputed that the applicable statute of limitations in this case is section 2122, subdivision (a) which states, "The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following:  [¶] (a) Actual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding. *An action or motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud.*" (Italics added.)

I.  *ANALYSIS*

A.  *Statute of Limitations*

Rochelle's action is time-barred because she had the opportunity to obtain knowledge from sources open to her investigation at the latest by 2005.  Rochelle's focus on the cancelled check ignores the fact that she was aware of Kershek's alleged wrongdoing and bias on behalf of Dennis at that time, and at that time accused Kershek of fraud.  Moreover, she had already discovered, or reasonably should have discovered, the facts and circumstances to support her prior claim of fraud when, in May 2008, she filed a motion to set aside the same judgment based on Kershek's fraud.

The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action.  Plaintiffs are charged with presumptive knowledge of an *injury* if they have information of circumstances ""to put a reasonable person *on inquiry*, or [*if they have*] *the opportunity to obtain knowledge* from sources open to [their] investigation."  (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896-897 (*Gutierrez*).)

In order to allege facts supporting a theory of delayed discovery, the plaintiff must show that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period.  (*Fox v. Ethicon Endo-Surgery, Inc., supra,* 35 Cal.4th at p. 808.)  Rochelle admits no such diligent investigation occurred.

Moreover, the $180 check, check register and bank statement were all under Rochelle's control.  Constructive and presumed notice or knowledge are equivalent to knowledge.  When Rochelle had ""the opportunity to obtain knowledge from sources

11

open to [her] investigation [such as her own records in her own possession], the statute commence[d] to run."'" (*Kline v. Turner, supra,* 49 Cal.App.4th at p. 1374.)

Rochelle contends that, based upon her fiduciary relationship with mediator Kershek, the law requires "less investigation and diligence from the complaining party." (AOB p. 17.) Indeed, Rochelle contends that because of her fiduciary relationship with Kershak she was under *no* duty of inquiry, and that the statute did not run until she "actually discovered the non-disclosed attorney/client relationship." We reject this contention.

1. *Rochelle has forfeited this claim*

"Th[e] point . . . was not raised in [plaintiffs'] opposition papers or during argument below. Hence, it was neither considered nor ruled upon by the trial court. It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal." (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.) "An argument or theory will generally not be considered if it is raised for the first time on appeal." (*American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281.)

Rochelle never raised any argument before the trial court that Kershek was a fiduciary and she thus should be relieved of any duty to investigate. Moreover, at oral argument her counsel never mentioned the word "fiduciary" or that Rochelle had no duty to investigate. Not having raised the issue in the court below, and not giving the court an opportunity to rule on this issue, the claim is forfeited. Moreover, even if we were to address this contention on the merits, we would conclude it is unavailing.

12

2. *Rochelle's alleged fiduciary relationship with Kershek*

Rochelle asserts she had no duty to investigate based upon her fiduciary relationship with Kershak, because he was the parties' mediator. This contention is unavailing.

A plaintiff is not absolved of her duty of due diligence or duty to inquire even if the wrongdoer was a fiduciary as long as she has information which would put a reasonable person on notice of wrongdoing. (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874-875 (*Miller*).)

*Miller* is instructive. In that case, a marital settlement agreement was entered into by a spouse who was allegedly unaware of the true value of certain assets subject to the settlement. The plaintiff wife asserted that her husband's attorneys misrepresented the value of stock owned by her husband. (*Miller, supra,* 33 Cal.3d at p. 871.) When the wife signed the marital settlement agreement in 1971, she had "doubts" as to the actual value of her husband's Bechtel stock. In 1972 and 1973, the wife made unsuccessful inquiries to investigate her doubts. (*Miller supra,* 33 Cal.3d at pp. 872-873, 875.) The wife's complaint alleged she had no knowledge of the "true value" of the stock until it was sold in 1977. (*Id.* at p. 872.) The wife brought an action in 1978. The Supreme Court held that despite wife's lack of definite knowledge, the statute began to run in 1971 and 1972 when her suspicions put her on inquiry notice. (*Id.* at pp. 873, 875.)

In doing so, the California Supreme Court expressly considered and rejected the same argument Rochelle makes here: that she had no duty of inquiry because Kershek had a fiduciary duty to provide her with full and correct information. The high court held

there that despite the existence of a fiduciary relationship, the plaintiff wife nonetheless had a duty to investigate "if she became aware of facts which would make a reasonably prudent person suspicious, [and that she was] charged with knowledge of matters which would have been revealed by such an investigation." (*Miller, supra,* 33 Cal.3d at p. 875.)

Likewise in this case, Rochelle had the opportunity to obtain knowledge from sources open to her investigation, because of the undisputed facts that the cancelled check was written from her checking account, listed on her check register before and after checks that she wrote, the check was mailed back to her with her bank statement, and she kept all these items in her home for several years until she went through her possessions in December 2009. Thus, even if there was a fiduciary relationship, Rochelle had a duty to investigate or to be charged with the knowledge of the facts that investigation would have revealed.

Rochelle's citations to *Hobart v. Hobert Estate Co.* (1945) 26 Cal.2d 412 (*Hobart*), *Gutierrez, supra,* 39 Cal.3d 892, *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805 (*April*) and *Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528 (*Amen*) do not support her position.

In fact, *Hobart* harms, rather than helps, her position. There, our high court held that while it is true in some cases that the existence of a confidential or fiduciary relationship relaxes the duty to investigate by reason of the fact that the plaintiff often relied upon the assumption that her fiduciary was acting on her behalf, the duty to investigate still arises once the plaintiff becomes aware of facts which would make a

14

reasonably prudent person suspicious, and the plaintiff is charged with the knowledge of facts which would have been discovered by such an investigation. (*Hobart, supra,* 26 Cal.2d at pp. 440-442.)

Further, *Hobart* is distinguishable. In *Hobart*, the court found the defendant attorney had superior knowledge of the value of a corporation's stocks and that plaintiff did not make a complete investigation of the stock value in reliance of the defendant attorney's representations. (*Hobart, supra,* 26 Cal.2d at p. 435.) Based on the fiduciary relationship between the defendant attorney and plaintiff, the court found the same degree of diligence was not required from plaintiff where he had no reason to suspect the defendant attorney's fraud. (*Id.* at p. 440.)

Here, by contrast, Rochelle had reason to suspect an improper relationship between Kershek and Dennis. Her letters in 2005 and the 2008 lawsuit were sufficient to raise a reasonable suspicion of some prior relationship between Kershek and Dennis. Unlike the plaintiff in *Hobart,* who had no reason to suspect the defendant attorney's misrepresentations, Rochelle not only suspected an improper relationship between Kershek and Dennis, but she advised Kershek in 2005 that she intended to pursue claims of fraud against him.

Rochelle's reliance on the *April* decision is likewise misplaced. The Court of Appeal there applied the delayed discovery rule where the act causing the plaintiffs injury was difficult for the plaintiff to detect, especially where the defendant has been in a far superior position to comprehend the act and injury. (*April, supra*, 147 Cal.App.3d at p. 831.) In *April,* the defendants erased evidence on the tapes of a television show while the

15

tapes were in their exclusive custody and control. (*Id.* at p. 832.) Because the defendants occupied a fiduciary relationship with respect to their plaintiff client and the evidence was in their exclusive control, the *April* court found the cause of action did not accrue until the plaintiff discovered the tapes were erased, not on the date of their erasure. (*Ibid.*) Here, there was no evidence that Kershek destroyed evidence that was in his sole custody or prevented Rochelle from discovering information.

*Amen* and *Gutierrez,* are also inapplicable. In *Amen, supra,* 58 Cal.2d 528, a breach of contract action, the court found that the plaintiff's ignorance of the defendant escrow agent's breach in notifying her of the need to obtain a tax clearance certification to avoid tax liability was justifiable, because she did not learn of any breach until she became liable for taxes. (*Id.* at pp. 534-535.)

In *Gutierrez,* the plaintiff patient claimed the statute of limitations against her doctors did not begin to run until after she had consulted an attorney who advised her that she had a cause of action, even though she suspected her doctors committed malpractice at an earlier date. (*Guiterrez, supra,* 39 Cal.3d at p. 897.) The California Supreme Court in *Gutierrez* found the statute of limitations commenced when the plaintiff suspected her doctors' malpractice, not when her attorney notified her of the legal theories and remedies. (*Ibid.*)

Here, by contrast, as we have discussed, Rochelle suspected wrongdoing by Kershek that caused her significant financial loss no later than 2005. She sued to set aside the same judgment on the basis of fraud in 2008. As our high court stated in *Jolly, supra*, 44 Cal.3d at page 1111: "Once the plaintiff has a suspicion of wrongdoing, and

16

therefore an incentive to sue, she must decide whether to file suit or sit on her rights. *So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.* (Italics added.)

The *Jolly* decision confirms that the statute of limitations begins to run at the time of suspicion when a plaintiff is "on inquiry," as Rochelle was, and it was her duty thereafter to find out the facts supporting her claim. Rochelle is barred from invoking the delayed discovery rule because the undisputed evidence shows that she suspected Kershek of fraudulent conduct and could have discovered the facts of Kershek's alleged improper relationship with Dennis long before December 31, 2009. Kershek's role as a mediator did not diminish her duty to investigate where she suspected Kershek's fraud no later than 2005.

B. *Attorney Fees Award*

Rochelle asserts the court erred in awarding $10,000 in attorney fees to Dennis because the court made no findings on whether an award of attorney fees is appropriate, whether there was a disparity in access to funds to retain counsel, and whether one party was able to pay for legal representation. Without citation to the record, Rochelle then contends that the evidence demonstrated that Dennis could pay his own fees, and it was she "who was probably in need of funds to pay her attorney." We conclude this claim has been forfeited as Rochelle failed to oppose the attorney fee request in the proceedings below.

Section 2030, subdivision (a)(1) requires the trial court in a dissolution proceeding to ensure that each party has access to legal representation. If necessary, the trial court

may order one party to pay the other party's "reasonably necessary" attorney fees "based on the income and needs assessments" of the parties. (*Ibid.*)

Here, it is undisputed that Rochelle never opposed Dennis's attorney fee request below. "[U]nder the doctrine of invited error, a party is estopped from asserting prejudicial error where his own conduct caused or induced the commission of the wrong." (*Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1167.) Thus, Rochelle is estopped from appealing whether the court erred in awarding Dennis $10,000 in attorney fees. (*Ibid.*)

Moreover, even if we were to conclude that Rochelle did not forfeit this issue, we would conclude that the court did not abuse its discretion in awarding $10,000 in fees. Dennis's income and expense declaration stated he had incurred $25,808 in fees and costs. At the hearing on the motion to dismiss, the court inquired of his counsel as to the time span within which these fees were incurred. Counsel for Dennis then made an offer of proof, which Rochelle's lawyer accepted, that identified fees for the response to the motion and the civil lawsuit as about $14,000 to $15,000. Defense of the set aside motion amounted to $11,000. The court the court reduced the award to $10,000. Based upon this record, the court did not abuse its discretion in awarding attorney fees to Dennis.

## DISPOSITION

The orders are affirmed.  Dennis shall recover his costs on appeal.

NARES, Acting P. J.

WE CONCUR:

McDONALD, J.

IRION, J.