Filed 2/29/16  Kizor v. Redig CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALAN KIZOR et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>MIRANDA REDIG, Individually and as Trustee, etc.,<br><br>    Defendant and Respondent. | A143793<br><br>(Contra Costa County<br>Super. Ct. No. MSC09-01689) |

Plaintiffs Alan and Juanita Kizor appeal from a judgment entered in favor of defendant Miranda Redig[1] on their complaint for fraud and breach of contract arising out of the Kizors' purchase in 2002 of a home, owned by defendant Miranda Redig and her now deceased husband, John Redig. The court overruled Redig's demurrer to the fraud causes of action based on the running of the applicable three-year statute of limitations, and we conclude that there was no error in the bifurcated trial in which a jury found those claims barred. However, we do find error in the court's ruling that the Kizors' breach of contract claim is necessarily barred by the applicable four-year statute of limitations. Therefore, we affirm the judgment as to the fraud claims but must reverse and remand as to the breach of contract claim.

---

[1] Miranda Redig appears individually and as trustee for the John F. Redig and Miranda H. Redig revocable trust.

1

## Factual and Procedural History

On June 11, 2009, the Kizors filed a complaint against Redig alleging causes of action for, among other things, breach of contract, failure to disclose, misrepresentation and fraud. The Kizors' second amended complaint alleges that the Redigs knew, at the time of the sale, that the house suffered from systemic water intrusion issues and that those water intrusion issues were not adequately repaired prior to the sale. The complaint alleges that the Redigs failed to disclose, suppressed and concealed the defects from the Kizors with the intent to defraud and deceive and induce the Kizors to purchase the property, and that the failure to disclose these known, material facts also constituted a breach of the purchase contract. Finally, the complaint alleges that "[t]he facts leading [the Kizors] to discover the fraud and deceit of the defendants . . . were not discovered by the [the Kizors] until on or about May 2007 at the earliest."

Redig demurred to the amended complaint on the ground that the Kizors' claims are barred by the statute of limitations. The court held that the Kizors' had sufficiently alleged delayed discovery of the fraud claims, but that the breach of contract claims were untimely and it, therefore, sustained without leave to amend the demurrer to that cause of action.

At Redig's request, the statute of limitations defense to the fraud claims was bifurcated and tried first to the jury. The following evidence was presented at trial:

On August 1, 2002, the Kizors entered into a contract with the Redigs to purchase the Redigs' home for $2.775 million, contingent on inspections of the property. The Kizors withdrew their offer to purchase after an inspection raised several concerns relating to the roof.

Shortly thereafter, Mr. Redig sent an email to Alan Kizor responding to the roofing inspector's concerns. In his email, Mr. Redig stated that there were many details relating to the design and construction of the roof that the inspector was not aware of when making his "preliminary assessment" and that he wanted to help the Kizors determine that the house does have "a well[-]constructed and performing roof . . . ." Mr. Redig explained that the builder had specifically selected the grade for the low slope

2

areas to "absolutely ensure proper drainage" and that underneath was a waterproof membrane designed to shed water to the gutter system. Mr. Redig also explained that the gutters had been designed and installed such that if any water were to get behind a gutter, "that water would simply shed out under the gutter and away from the house." Mr. Redig wanted the Kizors to know that they "took no shortcuts" building their home and that the low slope areas had received the "special attention" required.

Mr. Kizor also received an email from the roofing supplier regarding the roofing materials used in the construction of the house. In his email, the roofing supplier explained the steps taken in the design and installation of the roof to "address . . . water penetration concerns" and "safeguard the roof against failure."He explained that the care taken resulted in a "structurally sound and fully functional roofing system" that "withstood the test of time."

After receiving these emails, the Kizors had the roof inspected a second time. This time, the inspector reported that if the roof had been constructed and installed in the manner "the builder" and "the metal roof representative" had asserted, then the roof would have a reasonably long service life.

Thereafter, the Kizors made a second offer to purchase the home for $2.675 million, which the Redigs accepted. In connection with the sale, the Kizors received a transfer disclosure statement in which the Redigs indicated that they were not "aware of any significant defects [or] malfunctions in . . . [the] roof [or] windows." Escrow closed on October 1, 2002 and the Kizors moved into the home shortly thereafter.

In spring 2005,[2] the Kizors first noticed signs of water intrusion at a dining room window. When they obtained an estimate of the repair cost, in October 2005 according to the trial testimony, the contractor informed them that the house might suffer from a systemic water intrusion problem. Between February and June 2006, the Kizors hired

---

[2] The amended complaint alleges that these leaks were first observed in March 2005 but the testimony at trial was they were first noticed some time in the spring of that year.

3

several water intrusion experts to perform destructive testing on their home. The testing confirmed a systemic water intrusion problem.

In August 2006, the Kizors filed suit against the architect, the general contractor who built the house, and the roofing materials supplier. The complaint alleged negligence against the architect and contractor and negligent misrepresentation/ concealment against the contractor and the roofing material supplier. This action was dismissed, and the dismissal ultimately affirmed by this court, on the ground that only the Redigs, as original owners of the home, were entitled to assert those claims, and that any claim of the Kizors, who purchased the home from the Redigs, was against the Redigs. (*Kizor v. BRU Architects* (Jun. 8, 2011, A125423) [nonpub. opn.].) (*Kizor I*).)

During trial on the limitations issue in this case, Mrs. Kizor testified that during discovery in *Kizor I*, in May 2007, she and her husband first learned from documents produced in discovery that the Redigs had been aware of the undisclosed defects when they sold the house to the Kizors. The trial court permitted Mrs. Kizor to testify that it was only after receiving those documents that her "understanding of what the Redigs knew about the condition of the house before the close of escrow changed." However, over the Kizors' objection the court excluded all testimony regarding the content of the documents and the documents were not admitted into evidence.[3] The court explained that the only relevant information in the first phase of the trial was what the Kizors knew at

---

[3] The documents, which were marked as exhibits before trial, include among others: (1) A letter from John and Miranda Redig to Capital Glass dated November 1, 2000, in which the Redigs stated that "[m]any of the windows that [Capital Glass] installed leak water into [their] home" and that they had been told by their general contractor that the leaks were the result of "faulty installation of the windows." (2) A letter from John Redig to the roofing supplier dated March 30, 2001, complaining of ongoing roof-related leaks, that "the leaks in [the Redigs'] roof remain unresolved," and that Mr. Redig "would like to hear [Wong's] understanding of where this issue (the leaks) stands." (3) A contract dated December 26, 2001 between John and Miranda Redig and the general contractor for repairs needed to ready the house for sale that states, "[a]ll leaks to all building structures must be fixed"; "[f]looring damaged by leaks must be repaired to new condition"; and "repair/repaint damaged drywall due to leak in hall . . . ."

4

various times prior to filing the lawsuit. What the Redigs knew at the time of the sale was irrelevant to the statute of limitations issue.

The jury was instructed that "[t]he statute of limitations commences to run on a claim for fraud or failure to disclose conditions of property when a person knows of facts constituting fraud or failure to disclose, or when that person has knowledge of information that a reasonably prudent person, using reasonable diligence, could have suspected/discovered the facts indicating the fraud or failure to disclose." The jury was further instructed that Redig "contends Alan and Juanita Kizors' lawsuit was not filed within the time set by law. To succeed on this defense, Mrs. Redig must prove that the Kizors' claimed harm occurred before . . . June 11, 2006. If Miranda Redig proves that Alan and Juanita Kizors' claimed harm occurred before June 11, 2006, the Kizors' lawsuit was still filed on time if the Kizors prove that before that date they did not discover facts indicating the Redigs failed to disclose important information regarding defects in the house and with reasonable diligence could not have discovered those facts."

In closing argument, Redigs' attorney detailed the construction repairs and testing the Kizors performed before June 2006 and argued that from a comparison of what the Kizors learned between 2003 and June of 2006 with the information they received at the time of the purchase, "it's clear that a reasonable person would have suspected at that time that what they were told at the time that they purchased the property possibly wasn't complete or that maybe some information was withheld, maybe conditions were misrepresented to them, and that they might have a potential claim for fraud or for failure to disclose." The Kizors' attorney argued that "[b]efore June 11, 2006, the Kizors had no facts showing what the Kizors knew about [the] defects in the house. They certainly had information that the house had defects, but they didn't have information that the [Redigs] knew about those defects before the close of escrow." Counsel argued, "The information contained in [the 2007] document production alerted the Kizors to the fact that the Redigs did know something about the defective construction during and after construction of the home. . . . [¶] This information also told them for the first time that the transfer disclosure statement was a false representation of the Redigs' awareness of significant defects and

malfunctions." Finally, counsel argued that the Kizors acted diligently in filing a lawsuit against the contractor as soon as the defects were discovered, but that "from the information the Kizors had, there's no reason for them to conclude that the Redigs were any other than themselves: victims of a poorly constructed house."

The jury returned its verdict finding in favor of Redig on the statute of limitations defense and the court entered judgment in her favor. The Kizors timely filed a notice of appeal.

**Discussion**

1.    *The Fraud Claims*

The parties agree that Code of Civil Procedure section 338, subdivision (d) imposes a three years statute of limitations on plaintiffs' fraud claims. As indicated above, the court effectively instructed the jury the fraud claims were barred by the statute if the Kizors knew of or at least should have suspected their claims against the Redigs before June 11, 2006—three years before they filed their complaint.

Statutes of limitation " 'prescribe the periods beyond which' a plaintiff may not bring a cause of action." (*Norgart v. Upjohn Co*. (1999) 21 Cal.4th 383, 395.) A plaintiff must file suit within the applicable limitations period after accrual of the cause of action. (*Id.* at p. 397.) "The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.' " (*Ibid*.) An important exception to the general rule for defining the accrual of a cause of action is the discovery rule. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Ibid*.) A plaintiff discovers a cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements. (*Ibid*.) "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he limitations period begins once the plaintiff ' "has notice or information or circumstances to put a reasonable person on

6

inquiry" ' (*Gutierrez, v. Mofid* (1985) 39 Cal.3d 892, 896-897.) The plaintiff need not know " 'specific "facts" necessary to establish' the cause of action; rather, he may seek to learn such facts through the 'process contemplated by pretrial discovery'; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place—he 'cannot wait for' them 'to find' him and 'sit on' his 'rights'; he 'must go find' them himself if he can and 'file suit' if he does." (*Norgart v. Upjohn Co*., *supra*, 21 Cal.4th at p. 398.) Thus, the discovery rule establishes two alternate tests for the date of accrual of a cause of action: "(1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; or (2) an objective test based on when a reasonable person would have suspected that an injury was caused by wrongdoing. [Citation.] The first to occur under these two tests begins the limitations period." (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391.)

The Kizors do not challenge the sufficiency of the evidence that was admitted to support the jury's finding that the facts they had learned by June 2006 should have caused them to suspect that the Redigs had misstated or withheld pertinent information concerning the condition of the property at the time of the sale. They contend, however, that the trial court erred in ruling that the information discovered by the Kizors in 2007 through discovery in *Kizor I* was not relevant to the statute of limitations issue and excluding this evidence in the first stage of the trial. There was no error in the court's evidentiary ruling.

The Kizors argue that evidence of the contents of the documents produced in discovery in 2007 should have been admitted because it tended "to 'prove facts showing the time and surrounding circumstances of the discovery' and, most importantly here, 'what the *discovery was*.' " (Quoting *Hobart v. Hobart* (1945) 26 Cal.2d 412, 437.) The Kizors were permitted to testify that they received documents during discovery in their lawsuit against the contractor that alerted them to the possibility that the Redigs' had concealed known information at the time of the sale. Redig did not challenge the Kizors' assertion that they did not actually suspect the Redigs of fraud until 2007, but she contended that prior to June 11, 2006, they were nonetheless aware of sufficient facts

7

concerning the condition of the property that they should reasonably have investigated the possibility that the Redigs—like those the Kizors accused in their prior action—had withheld information from them. Although the documents that the Kizors obtained in discovery in the prior action unquestionably contain powerful evidence that the Redigs were aware of relevant facts that the Kizors claim not to have known (see fn. 2, *ante*), the trial court correctly determined that what information the Redigs knew at the time of the sale, as reflected in the 2007 documents, is not relevant to the date of accrual of the fraud claims. Although those documents undoubtedly were relevant and admissible to prove the merits of the Kizors' fraud claims, the only facts relevant to the limitations issue were those bearing on what the Kizors knew as of June 2006. Facts that they learned subsequently have no tendency to prove what they knew or should have known in June 2006.

The delayed discovery rule "delays accrual [of a cause of action] until the plaintiff has, or should have, inquiry notice of the cause of action. . . . [P]laintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put [them] on inquiry' " ' or if they have ' " 'the opportunity to obtain knowledge from sources open to [their] investigation.' " ' [Citation.] In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox v. Ethicon Endo-Surgery, Inc*. (2005) 35 Cal.4th 797, 807-808, fn. omitted.)

The Kizors also argue that the evidence was relevant to establish that even if they were on notice of the construction defects before June 2006, a reasonably diligent investigation, which they argue they conducted, would not have disclosed evidence of the fraud until May 2007. The discovery rule does not extend the statute of limitations, however, until an investigation produces evidence of a claim. The statute of limitations starts to run when a reasonable person would be suspicious that they were harmed by someone's wrongdoing. The jury concluded that by June 2006, a reasonable person would have suspected that the Redigs misstated or concealed pertinent facts concerning

8

the condition of the property. The evidence that the Kizors were told in about October 2005 that there appeared to be systemic water intrusion in the house, which was confirmed by experts they retained between February and June 2006, was sufficient to support that finding. That the Kizors filed their action alleging others of making these misrepresentations only two months beyond June 2006 also provides support for the jury's finding.

2.    *Equitable Estoppel*

In briefs filed prior to and during trial, the Kizors argued that defendant should be equitably stopped from asserting the statute of limitations defense because she continually attempted to conceal evidence, even after they filed the present action. The court initially indicated that it did not think equitable estoppel applied but would reserve decision until after trial. Although the judgment entered does not expressly address equitable estoppel, as the Kizors concede, the judgment implicitly rejects their estoppel argument. The Kizors argue that "the record contains more than enough evidence to support the Kizors' estoppel argument and to demonstrate that the doctrine applies, and the court needed to independently consider the evidence. Combined, this evidence tends to prove that Redig did, in fact, continually hide the ball and should, therefore, not be allowed to benefit by invoking the statute of limitations." (Italics omitted.)

Under California law, the doctrine of equitable estoppel can serve as a defense to an untimely action where the conduct of the alleged tortfeasor has induced another into forbearing suit within the applicable limitations period. (*Battuello v. Battuello* (1998) 64 Cal.App.4th 842, 847-848.) When a defendant's conduct has deliberately induced the plaintiff to delay filing suit, the defendant will be estopped from availing himself of this delay as a defense. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383-384.)

The Kizors, however, rely only on evidence of Redig's initial alleged fraud and her failure to subsequently reveal her alleged fraud sooner. They do not cite any conduct by Redig that demonstrates an intent or attempt to induce them into "forbearing suit

9

within the applicable limitations period." Accordingly, the court properly rejected the Kizors' equitable estoppel argument.

### 3. *The Breach of Contract Claim*

Although the trial court overruled Redig's demurrer contending that the Kizors' fraud claims were barred by the three year statute of limitations applicable to those claims, it sustained the demurrer to the breach of contract claim, governed by a four year statute of limitations (Code Civ. Proc., § 337). Therefore, although the jury found that by June 2006 the Kizors had sufficient knowledge of the facts to commence the running of the applicable limitations period, the jury was not asked to determine, and did not determine, whether the same was true as of June 11, 2005. Although, as the trial court noted, the Kizors unquestionably observed window leakage in the spring of 2005, in overruling the demurrer to the fraud claims the court held that that leakage did not necessarily put them on notice that the Redigs may have concealed a systemic water intrusion defect in the home. The trial court offered no explanation why the Kizors' awareness of the window leakage in the spring of 2005 triggered the statute for the breach of contract claim but not for the fraud claim, and we can discern none. The facts that the Kizors learned between October 2005 and June 2006 may have been sufficient to prove that the limitations period began to run by June 2006, but those facts do not necessarily show that the plaintiffs knew sufficient facts to commence the statute in June 2005.

The Kizors' complaint alleges that the terms of the purchase agreement between the Kizors and the Redigs required that the Redigs to "disclose all *known* material facts" about the house at the time of the sale and that the Redigs breached this contractual obligation by "fail[ing] to disclose and conceal[ing] facts and circumstances that would have suggested the potential for latent design and construction defects existing in the residence." The complaint alleges further that the Kizors had no reason to suspect that the Redigs knew of defects in the house at the time of the sale, until May 2007, when Miranda Redig first produced documents as part of discovery in *Kizor I*.

10

The standard of review for an order sustaining a demurrer is de novo. (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971.) " 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' " (*Id*. at pp. 971-972.)

The delayed discovery rule typically does not apply to breach of contract actions, which ordinarily accrue at the time of breach. (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 520, pp. 664-665, § 529, pp. 678-680.) However, the delayed discovery rule "may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 832 [the discovery rule is applicable to breach of contract actions involving fraud or misrepresentation].)

Here, the allegations of the complaint establish that in March 2005 the Kizors "noticed small unexplained water stains at the sill of a dining room window and a small area of minor discoloration on a wall adjacent to that window." "About this time," while planning an addition to the home, the Kizors "mentioned the minor water stains at the window sill" to their architect. The architect recommended a general contractor "take a look at the minor water staining on the dining room window sill." As the trial court recognized in overruling the demurrer to the fraud claims, knowledge of those facts was not necessarily sufficient to establish that plaintiffs should have suspected the concealment of information suggesting a systemic water intrusion defect to the entire structure. According to the evidence that was produced at trial, it was not until October 2005 that the contractor's "water intrusion specialist" investigated the leak and the Kizors first learned the residence "likely suffered from systemic problems." Since the Kizors filed their complaint in June 2009, within four years of October 2005, the breach of contract claim may have been timely while the fraud claims were not.

11

This conclusion yields the unfortunate consequence that although there was no error in the trial producing the finding that the Kizors' fraud claims are barred by the three-year statute of limitations, trial is necessary to determine whether the breach of contract claim is similarly barred by the four-year statute. Under the circumstances we have no choice but to reverse the judgment and remand the matter for further proceedings on the Kizors' cause of action for breach of contract.

**Disposition**

The judgment is affirmed as to all causes of action except the cause of action for breach of contract, as to which the judgment is reversed. The matter is remanded for further proceedings with respect to that cause of action. The parties shall bear their respective costs on appeal.

_____
Pollak, J.

We concur:

_____
McGuiness, P. J.

_____
Jenkins, J.

12