Filed 7/14/23  Tadevosyan v. Wolff CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BORIS TADEVOSYAN, | B317648 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No.19STCV36287) |
| v. | |
| LAWRENCE A. WOLFF et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Audra Mori, Judge.  Reversed.

Beloryan & Manukyan, Haik A. Beloryan and Vahe Shakhgeldyan for Plaintiff and Appellant.

Prindle, Goetz, Barnes & Reinholtz, Steven Maslauski and John Karimi for Defendants and Respondents.

—————————————————

Boris Tadevosyan sued Lawrence A. Wolff and Lawrence A. Wolff, DDS, Inc. (collectively Wolff) for dental malpractice, lack of informed consent, and medical battery. The trial court granted summary judgment in Wolff's favor on the ground that the one-year statute of limitations in Code of Civil Procedure[1] section 340.5 barred the action, finding that the limitations period began to run when Tadevosyan consulted an attorney and the attorney referred Tadevosyan to an expert for an independent medical examination. On appeal, Tadevosyan contends that the trial court improperly relied on privileged matter to reach its conclusion and that, in any event, Wolff was not entitled to judgment as a matter of law. We agree that moving party Wolff did not satisfy its initial burden and therefore summary judgment was improper.

## BACKGROUND

I.      History of Tadevosyan's dental treatment

Tadevosyan is an Armenian immigrant who can read English but cannot understand complex conversations in English. In 2015 and 2016, Tadevosyan consulted A to Z Dental about getting dentures. A to Z Dental devised a treatment plan for extraction of four teeth and placement of four implants with an overdenture and referred him to Wolff to begin the treatment.

After an initial examination, Wolff performed two surgeries on Tadevosyan. During the first surgery on March 24, 2017, Wolff resected Tadevosyan's maxillary and mandibular cysts, fixed jaw fractures, closed fistulas and bone fractures, and placed

---

[1]     All further undesignated statutory references are to the Code of Civil Procedure.

2

five stabilizers to support the fractured cortex and to stimulate bone growth. In June 2017, Wolff noted that Tadevosyan was "healing well." During the second, follow-up surgery on August 11, 2017, Wolff performed hardware removal, debridement, wound closure, and resection of granulomatous neoplasm.

A month later, on September 8, 2017, Tadevosyan returned to A to Z Dental. A to Z Dental told Tadevosyan that the work Wolff had performed was different than the treatment plan originally requested. Tadevosyan was disappointed that Wolff had changed the treatment plan and that what had been estimated to cost $2,000 would now be $12,000.

On July 3, 2018, Tadevosyan consulted an attorney. That same day, the attorney referred him to Jay Grossman, DDS, for an independent medical examination. On July 12, 2018, Dr. Grossman examined Tadevosyan and reported that the implants were inappropriately touching each other, causing bone loss, and that the implants would eventually fail. The doctor advised that further surgeries would be required to replace bone and to install new implants. Thereafter, A to Z Dental treated Tadevosyan, and, in September 2018, gave him overdentures. Since receiving his overdentures, Tadevosyan has been in constant pain.

II.    Tadevosyan's lawsuit and Wolff's motion for summary judgment

On July 12, 2019, Tadevosyan's attorney served on Wolff a 90-day notice of intent to sue under section 364.[2] Within that 90 days, on October 10, 2019, Tadevosyan filed his complaint and alleged three causes of action: (1) professional negligence, (2) lack of informed consent, and (3) medical battery. Tadevosyan generally alleged that A to Z Dental referred him to Wolff for a specific treatment plan, but Wolff performed a different treatment without consulting or informing Tadevosyan. And after Wolff's procedure, Tadevosyan began experiencing pain, discomfort, and difficulty eating. After consulting with an expert, Tadevosyan learned that Wolff improperly placed the implants, necessitating a complete overhaul of the implants.

The parties engaged in discovery, and Wolff asked Tadevosyan to admit that (1) his attorneys referred him to Dr. Grossman for examination, (2) he or his attorneys initially engaged Dr. Grossman on July 3, 2018, and (3) he was referred to and examined by Dr. Grossman because Tadevosyan was suspicious that Wolff failed to comply with the community standard of care. Tadevosyan objected to these requests for admission on the grounds, among others, that the requests asked for premature disclosure of expert witnesses and violated the attorney-client privilege and work product doctrine. After Wolff

---

[2]    Section 364 provides that no action for professional negligence against a health care provider shall be commenced unless the defendant has been given 90 days' notice of intent to sue. If notice is served within the limitations period, the notice extends the limitations period for 90 days. (§ 364, subd. (d).)

4

moved to compel responses and the parties met and conferred, Tadevosyan, subject to a reservation of objections, answered the requests, admitting his attorneys referred him to Dr. Grossman and that they engaged him on July 3, 2018 but denying that the referral was due to his suspicion that Wolff had been negligent. Tadevosyan also produced an engagement agreement with Dr. Grossman for expert testimony. Dr. Grossman's engagement agreement asked for a "[b]rief description of allegation," and Tadevosyan's attorney wrote, "Failed dental implant surgery(ies) [¶] Facts previously provided in email back on 9/3/18."[3]

Wolff then moved for summary judgment on the ground that the one-year statute of limitations in section 340.5 barred the complaint.[4] Wolff argued that Tadevosyan had notice of his claim on or by July 3, 2018, and therefore the one-year statute of limitations expired on July 3, 2019. To establish that Tadevosyan had notice of his claim as of July 3, 2018, Wolff relied on these material facts: (1) on September 8, 2017, Tadevosyan was seen at A to Z Dental and was disappointed to learn that Wolff had changed his treatment plan, (2) Tadevosyan's attorney referred him to Dr. Grossman on July 3, 2018; and (3)

---

[3]     The engagement agreement stated that Dr. Grossman was engaged on July 3, 2018, but Tadevosyan's attorney signed the agreement in November 2019. Based on the date the agreement was signed and on the references to "failed dental" surgeries and that the facts were "previously provided in [an] email back on 9/3/18," it therefore appears that the attorney filled out the engagement agreement after July 3, 2018.

[4]     Wolff also filed a second motion for summary judgment on the ground that he met the standard of care. That motion is not at issue on appeal.

5

Tadevosyan or his attorney engaged Dr. Grossman that day and the engagement agreement referred to "failed dental" surgeries. Based on these facts, Wolff argued that Tadevosyan suspected he had been injured by Wolff as of the date he engaged counsel.

Tadevosyan opposed the motion. Although Tadevosyan did not dispute Wolff's material facts, Tadevosyan objected that they were based on inadmissible evidence. Thus, in written evidentiary objections, Tadevosyan objected that the engagement agreement with Dr. Grossman and that his attorney referred him to Dr. Grossman were subject to the attorney-client privilege and the work product doctrine. But even if admissible, Tadevosyan argued that the mere fact his attorney referred him to Dr. Grossman did not establish when Tadevosyan discovered the negligent cause of his injury. Further, in his declaration, Tadevosyan said he was shocked to learn on September 8, 2017 that the treatment Dr. Wolff performed was different than requested. He has been in constant pain since September 2018, when he got his overdentures from A to Z Dental.

III.    The trial court grants the motion for summary judgment

The trial court granted the motion for summary judgment, finding that Tadevosyan was on notice of his claims against Wolff no later than July 3, 2018. Overruling the evidentiary objections because Tadevosyan had not shown how any privilege applied, the trial court relied on Tadevosyan's admissions that he engaged Dr. Grossman on July 3, 2018 and that the engagement agreement referred to "failed dental" surgeries. Based on this evidence, the trial court found that Tadevosyan had discovered his injuries and its negligent cause on or by July 3, 2018.

6

**DISCUSSION**

I.    Summary judgment and standard of review

Summary judgment provides courts with a mechanism to cut through the parties' pleadings to determine whether trial is necessary to resolve the dispute. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party bears the burden of persuasion that there is no triable issue of material fact and that it is entitled to judgment as a matter of law. (§ 437c, subd. (c); *Aguilar*, at p. 845.) A defendant moving for summary judgment can meet its burden by showing there is a complete defense to the cause of action. (§ 437c, subd. (p)(2); *Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 997.) A moving defendant therefore has the initial burden to show that undisputed facts support summary judgment based on an affirmative defense such as the statute of limitations. (*Drexler v. Petersen* (2016) 4 Cal.App.5th 1181, 1188–1189 (*Drexler*).)

On appeal from a summary judgment ruling, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Id.* at p. 768.)

II.    Statute of limitations

The trial court here found that Tadevosyan did not comply with the one-year limitations period in section 340.5. Tadevosyan counters that the trial court relied on inadmissible evidence in reaching that conclusion and, in any event, the evidence did not establish Wolff was entitled to judgment as a matter of law. As we now explain, we agree with Tadevosyan.

7

Section 340.5 provides that an action for negligence against a health care provider shall be commenced either three years after the date of injury or "one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."  As used in section 340.5, "injury" means a person's physical condition *and* its negligent cause.  (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896.)  The injury is not necessarily the ultimate harm suffered but instead occurs when appreciable harm is first manifested. (*Brewer v. Remington* (2020) 46 Cal.App.5th 14, 24.)  Whether there has been a belated discovery of the cause of action in malpractice cases essentially is a question of fact, and only where reasonable minds can draw but one conclusion from the evidence does the question become a matter of law.  (*Drexler*, *supra*, 4 Cal.App.5th at p. 1189.)

Section 340.5's discovery rule "sets forth two alternate tests for triggering the limitations period:  (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing.  [Citation.]  The first to occur under these two tests begins the limitations period."  (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391.)  Under the first test, the plaintiff need only suspect someone has done something wrong, which does not require the plaintiff to know the specific facts (e.g., medical cause, diagnosis) necessary to establish a medical negligence claim.  (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397–398; *Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, 1295.)  A plaintiff has presumptive knowledge of the negligent injury once he has " 'notice or information of

8

circumstances to put a reasonable person *on inquiry*, or *has the opportunity to obtain knowledge* from sources open to his investigation.' " (*Gutierrez v. Mofid, supra,* 39 Cal.3d at p. 896; accord, *Kitzig v. Nordquist, supra,* 81 Cal.App.4th at p. 1391 [one-year statute of limitations begins to run when plaintiff suspects or should suspect wrongdoing caused injury].)

Here, the trial court found that Tadevosyan suspected on or by July 3, 2018 that Wolff had injured him because that is when Tadevosyan consulted an attorney and his attorney referred him to Dr. Grossman due to allegedly "failed dental" surgeries. We will assume without deciding that this evidence was admissible. Even so, it did not entitle Wolff to judgment as a matter of law.

To be sure, a malpractice plaintiff's consultation with an attorney is a material fact relevant to show a suspicion of wrongdoing. But it is not necessarily sufficient *by itself* to trigger the statute of limitations. In *Dolan v. Borelli* (1993) 13 Cal.App.4th 816, 820, for example, the plaintiff had surgery in April 1985 to correct carpal tunnel syndrome. After the surgery, the plaintiff's pain was worse and continued to be so 60 days later, causing the plaintiff to believe something had gone wrong. (*Ibid.*) The plaintiff consulted an attorney in February 1986, and in June 1986, had another surgery with a different doctor. During that surgery, it was discovered that the original doctor had not "release[d]" the carpal tunnel ligament. (*Ibid.*) The court found that the statute of limitations began to run no later than February 1986 because the plaintiff said she suspected by then that her doctor had improperly treated her and worsened her condition and had reported those suspicions to her attorney. (*Id.* at p. 823.) Thus, the *plaintiff's admission she suspected*

9

*wrongdoing*, which she then reported to an attorney, triggered the statute of limitations.

In *Drexler, supra*, 4 Cal.App.5th 1181, from December 2006 to January 2011, the plaintiff Drexler consulted two doctors about headaches he was having, and the doctors continually told him they were tension headaches or due to carpal tunnel syndrome. (*Id.* at pp. 1186–1187.) At no time was Drexler satisfied with what the doctors were telling him, but he nonetheless trusted them. Finally, in January 2011, Drexler consulted an attorney, who told him he did not have a case. Thereafter, Drexler's condition worsened, and, in January 2013, an MRI revealed he had a large brain tumor that accounted for his headaches. The trial court found, in part, that the one-year statute of limitations began to run when Drexler consulted the attorney. The appellate court reversed, noting that while Drexler's consultation with an attorney was strong evidence he then suspected wrongdoing, there was a factual dispute when Drexler became aware of the appreciable harm caused by the doctors. It was, therefore, a factual question when the appreciable harm (failure to diagnose a brain tumor) manifested to trigger the statute of limitations. (*Id.* at pp. 1197–1198.)

Similarly here, Tadevosyan's consultation with an attorney on July 3, 2018 is a material fact relevant to determine when the limitations period began to run, but it is not a dispositive one. Rather, the evidence established only that as of July 3, 2018 Tadevosyan knew Wolff had performed a procedure to which Tadevosyan had not consented. That is, on September 8, 2017, Tadevosyan returned to A to Z Dental so that A to Z Dental could complete the treatment. Tadevosyan was disappointed then to learn Wolff had deviated from the original treatment plan and

10

that the cost of the new treatment would be $12,000 instead of the originally estimated $2,000.  This evidence might establish at most that Tadevosyan knew on September 8, 2017 that Wolff had performed a procedure without his informed consent.[5]

However, it did not establish Tadevosyan knew that the treatment Wolff actually provided was negligently performed. Indeed, in moving for summary judgment, Wolff cited no evidence that by July 3, 2018 Tadevosyan was, for example, in extraordinary pain or had some reason to suspect Wolff had negligently performed the procedure.  (Compare *Dolan v. Borelli*, *supra*, 13 Cal.App.4th at p. 820 [plaintiff in worse pain after treatment, and told attorney she suspected negligent treatment].) Instead, Tadevosyan said in his declaration opposing summary judgment that he has been in constant pain and discomfort since September 2018, when he received his overdentures from A to Z Dental.  Thus, it is unclear that Tadevosyan consulted an attorney on July 3, 2018 because he suspected that Wolff had negligently performed the implant procedure, as opposed to consulting the attorney for advice about informed consent.  (See, e.g., *Kitzig v. Nordquist, supra*, 81 Cal.App.4th at pp. 1392–1393 [plaintiff's consultation with second doctor didn't pertain to injury for which she later sought recovery and therefore didn't necessarily trigger statute of limitations].)  Stated otherwise, it is not clear that Tadevosyan knew as of July 3, 2018 that Wolff had performed the wrong procedure *incorrectly*, which is the subject

---

[5]     Wolff did not move for summary adjudication of any individual cause of action and instead moved only for summary judgment.  We therefore have no occasion to decide whether any individual cause of action is time-barred.

11

of his negligence cause of action, as opposed to merely knowing that Wolff had performed the wrong procedure.

Nor does Tadevosyan's attorney's notation in the engagement agreement that the allegation was "failed dental" surgeries persuade us to the contrary. That notation could mean any number of things. It could suggest, as Wolff asserts, that Tadevosyan suspected the implant procedure was incorrectly done. Or it could mean Tadevosyan thought Wolff's surgery was a failure only because he had not consented to it. In the absence of clarifying evidence, we cannot find that this vague notation established what Tadevosyan knew at that time. Moreover, it is unclear *when* the attorney made the notation. The attorney signed the engagement agreement in November 2019, by which time the independent medical examination had revealed that the implants were improperly done. Therefore, if the attorney made the notation about "failed dental" surgeries in November 2019, the notation has no clear relevance to what Tadevosyan suspected in July 2018, when he was referred to Dr. Grossman.

Finally, Tadevosyan's attorney's referral to Dr. Grossman for an independent medical examination does not establish that Tadevosyan knew Wolff had injured him. On this record, nothing more can be said about that referral other than that it was part of the attorney's due diligence. (See, e.g., *Enfield v. Hunt* (1979) 91 Cal.App.3d 417, 424 [requiring attorney to file malpractice action before available evidence indicates action has merit would contradict public policy]; see *Kitzig v. Nordquist*, *supra*, 81 Cal.App.4th at p. 1393 ["Holding that seeking a second opinion *necessarily* triggers a malpractice statute of limitations whenever a patient is motivated by a possible suspicion—however,

12

momentary—that her doctor was 'doing something wrong' would hinder a patient's ability to obtain the best medical care."].)

We conclude that Tadevosyan's consultation with an attorney and referral to an expert for an independent medical examination did not trigger the running of the statute of limitations as a matter of law. Because Wolff therefore did not sustain its burden as the moving party, the judgment must be reversed.

## DISPOSITION

The judgment is reversed. Plaintiff Boris Tadevosyan shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.                    HEIDEL, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.